UNITED STATES of America, Plaintiff,

v.

**Fritz MURRAY, Defendant.**

**No. 09–cr–73–bbc.**

United States District Court, W.D. Wisconsin.

Sept. 29, 2009.

Laura Przybylinski Finn, United States Attorney's Office, Madison, WI, for Plaintiff.

Corey C. Chirafisi, Chirafisi Law Office, S.C., Madison, WI, for Defendant.

## ORDER

### BARBARA B. CRABB, District Judge.

Defendant Fritz Murray has filed objections to the report and recommendation of the United States Magistrate Judge entered on September 22, 2009. As he did before the magistrate judge, he argues that he cannot be found guilty of violating 18 U.S.C. § 922(g)(9) when he had no reason to believe that he was subject to it. For the reasons the magistrate judge set out in his report, this argument is of no help to defendant. The law is clear: a person who has been convicted of a misdemeanor crime of domestic violence may not possess a gun, whether or not the person is aware of the prohibition.

Whether the law is a wise exercise of legislative power, whether it has been publicized adequately and if not, whether it is fair to enforce it are all legitimate questions, *see, e.g., United States v. Wilson,* 159 F.3d 280, 293–95 (7th Cir.1998) (Posner, J., dissenting; discussing these questions), but they are not ones that can be raised as a defense in this court. In *Wilson,* the Court of Appeals for the Seventh Circuit held definitively that § 922(g)(9) is a valid exercise of Congress's power under the commerce clause and does not violate either the Tenth Amendment or the due process clause. *Id.* at 289. (Although Wilson was prosecuted under subsection (8) of § 922(g), he raised the same due process arguments that defendant is raising in this case: a person cannot be found guilty of violating a statute he never knew existed and cannot violate the statute "knowingly" if he never knew of it.) Accordingly, I will adopt the United State Magistrate Judge's recommendation to deny defendant's motion in limine to require the government to prove that he knew it was unlawful for him to possess a firearm and grant the government's opposing motion in limine.

## ORDER

IT IS ORDERED that the recommendation of the United States Magistrate Judge is ADOPTED. FURTHER, IT IS ORDERED that defendant Fritz Murray's motion in limine is DENIED and the government's motion in limine is GRANTED. It is not necessary for the government to prove that defendant knew that he was violating the law when he possessed a firearm after he had been convicted of a misdemeanor crime of domestic violence.

## REPORT AND RECOMMENDATION

### STEPHEN L. CROCKER, United States Magistrate Judge.

The grand jury has charged defendant Fritz A. Murray with knowingly and unlawfully possessing a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). Before the court are the parties' competing motions in limine on what level of *scienter* the government must prove to establish the charged offense. Although such motions normally are resolved by the district judge at the final hearing the Thursday before trial, Murray has asked for a report and recommendation so that he has an early indication from the court what to expect at trial.

Murray argues that the government must prove that he knew it was unlawful for him to possess a firearm. See Defendant's Motion in Limine, Dkt. 11. The government argues that it only must prove that Murray knew he possessed the firearm and that Murray's knowledge of the law is irrelevant. *See* Government's Mo-

tion in Limine, Dkt 10. The government is correct: it does not need to prove that Murray knew it was illegal for him to possess a shotgun.

Although the parties' competing motions raise only a question of law, Murray has offered an extensive factual proffer, perhaps to educate the court regarding his perception of the equities involved. Murray reports that he has been an airline pilot for about thirty years. On June 9, 1992 Murray was convicted in La Crosse County Circuit court on one count of battery and one count of endangering safety by use of a weapon. As part of his sentence Murray was prohibited from possessing any weapons except that the court allowed him to "go deer hunting." About four years later, on September 30, 1996, Congress enacted the statute charged against Murray in this case. More than five years later, following the September 11, 2001 terrorist attacks, the United States Department of Homeland Security asked Murray, through his employer, Wisconsin Air, if he wished to participate in the Federal Flight Deck Officer Program, an aspect of which would have allowed Murray to possess a firearm while performing flight duties as a pilot. Murray did not seek to participate in the program. On September 22, 2005, a woman called police to Murray's residence in La Crosse County and claimed that Murray was drunk, cursing, and had thrown a cat onto the floor. Murray was arrested, then released on conditions, one of which was that he surrender any weapons he possessed. On October 5, 2005, Murray surrendered to the sheriff's department the shotgun now charged against him in the federal indictment. Murray currently is in the Army ready reserves after having served in VietNam in the 1970s and then the active reserves. No one from the Army ever has told Murray that he is ineligible to bear arms; to the contrary, Murray inferred from his continued participation in the reserves that he was allowed to do so.

Perhaps these facts are relevant to whether the government should have charged Murray with a § 922(g)(9) violation in the first place, but they are irrelevant to the dispute actually presented by the competing motions. Judges do not possess and should not attempt to exercise prosecutorial discretion, which is entrusted to the Executive Branch. *In Re United States*, 572 F.3d 301, 312 (7th Cir.2009). The question before the court is whether § 922(g)(9) requires the government to prove that Murray knew that he was a prohibited person. It does not.

In *United States v. Wilson*, 159 F.3d 280 (7th Cir.1998) this question was raised in the context of a prosecution under § 922(g)(8) which criminalizes firearm possession by people under certain types of restraining orders, arguably an even less intuitive prohibition. Noting that this was a "relatively new and obscure" portion of § 922, the court nonetheless held that

> To the extent that Wilson is arguing that he was unaware of the law and that his conviction therefore cannot stand, he is also incorrect. The traditional rule in American jurisprudence is that ignorance of the law is no defense to a criminal prosecution.... Wilson has not shown that the present statute falls into an exception to this general rule, ... and the fact that he was unaware of the existence of § 922(g)(8) does not render his conviction erroneous.

*Wilson*, 159 F.3d at 289.

The court also rejected the defendant's claim that because he had no notice of the law charged against him, he was unable to form the requisite mens rea to violate it. The court held that § 924(a)(2)'s requirement that a defendant knowingly violate § 922(g)(8) only required proof that the defendant knew the facts that constituted

the offense. It did not require the government to prove a culpable state of mind. The court found unavailing defendant's attempt to import the higher mens rea requirement deemed necessary in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608, (1994) to prove the unlawful possession of a machine gun in violation of 26 U.S.C. § 5861(d). Because § 5861(d) did not contain an explicit mens rea requirement, the statute appeared to impose strict liability for the possession of otherwise lawful firearms whose contraband nature was not readily apparent. The Court inferred from Congress's silence regarding mens rea that Congress had intended the statute to require knowledge of the firearm's contraband nature. *Id.* at 619–20, 114 S.Ct. 1793. In contrast § 922(g) *does* require a specific state of mind, which means that there is no need to tack on a higher level of scienter than Congress could have intended. *Wilson*, 159 F.3d at 288–89.

Other circuits have reached the same conclusion. *See, e.g., United States v. Matthews*, 498 F.3d 25, 31–32 (1st Cir. 2007) (trial court erred by requiring government to prove defendant's specific intent to violate § 922(g)(1)); *United States v. Gilbert*, 430 F.3d 215, 218–19 (4th Cir. 2005) (no specific intent requirement for § 922(g)(1)); *United States v. Griffin*, 389 F.3d 1100, 1104 (10th Cir.2004) ("Conviction under § 922(g)(1) therefore does not require proof that a defendant knew that he was prohibited from possessing a firearm"); *United States v. Hancock*, 231 F.3d 557, 562–63 (9th Cir.2000)("We decline to read the element of actual knowledge of the statute into 18 U.S.C. § 922(g)(9)"); *United States v. Rodriguez*, 132 F.3d 208, 211 (5th Cir.1997)("a defendant need not have knowledge of the law to violate the firearms statute 'knowingly' ").

Murray's citation to *United States v. Kitsch*, 2008 WL 2971548 (E.D.Pa.2008) does not stem this tide of cases supporting the government's position. First, it is an unpublished opinion from a district court in another judicial circuit and therefore has no precedential value. Second, the court's actual holding in *Kitsch*, after lengthy dicta as to the reach of the "knowingly" requirement in § 922(g)(1), is that the government had to prove beyond a reasonable doubt that the defendant "knew or was willfully blind to the fact that he had a prior felony conviction that had not been set aside or expunged." *Id.* at *7. This was a fact dispute, not a question of law. To the extent that the court's holding in *Kitsch* could be analogized to Murray's situation (Murray, like Kitsch, claims that he did not know he was a prohibited person), it is contrary to the law of this circuit set forth in *United States v. Wilson*, 159 F.3d 280.

It is unavailing for Murray to argue that failure to require proof of a knowing violation creates a strict liability offense. *See* Reply Brief, dkt. 20, at 2–3. Apart from *Staples*, discussed above, Murray cites cases in which the Court held that the government's burden of proving a defendant's knowledge was broader than the government wanted it to be. *See United States v. X–Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994)(child pornography); *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)(food stamp fraud); *Flores–Figueroa v. United States*, —— U.S. ——, 129 S.Ct. 1886, 1891, 173 L.Ed.2d 853 (2009)(aggravated identity theft). In these cases, the court found that knowledge requirement should apply to each element of the offense that criminalized otherwise innocent conduct. *X–Citement Video, Inc.*, 513 U.S. at 72, 115 S.Ct. 464. For instance, in *Liparota*, the Court noted that one of the elements of the offense was that the defendant's transfer of food stamps be done "in any manner

not authorized by law;" hence, this *was* that rare case where, by virtue of the elements of the offense, a defendant's ignorance of food stamp law was a defense to the charge. 471 U.S. at 433, 105 S.Ct. 2084. On the other hand, Justice Alito's concurrence in *Flores–Figueroa* cites statues in which the adverb "knowingly" does not carry through to every element of the offense. 129 S.Ct. at 1895–96 (Alito, J., concurring). In other words, how far the adverb "knowingly" reaches into the elements of an offense depends on the circumstances.

But none of this actually advances Murray's argument in the instant case because he is not claiming that he was unaware of the facts in his case that constitute the elements of a § 922(g)(9) offense (that he had a misdemeanor conviction involving an element of domestic violence and that he later possessed a shotgun). Rather, Murray is arguing that he did not know that this constellation of facts constituted a crime, and therefore, he is innocent. Essentially, Murray is asking this court to import into § 922(g) a scienter element reserved for willful violations of complicated statutory schemes like the tax code and money laundering statutes. *Compare United States v. Murphy,* 469 F.3d 1130, 1137–38 (7th Cir.2006)(proving a defendant's willful failure to file a tax return requires the government to prove the voluntary and intentional violation of a known legal duty) with *United States v. Brandt,* 546 F.3d 912, 916 and 916 n. 2 (7th Cir. 2008) (noting in dicta in a false statement prosecution that "every other circuit to discuss the issue has rejected the notion that ignorance of the law negates willfulness under [18 U.S.C.] § 1001"). Murray's request far exceeds the level of scienter the court is required to prove in this case.

This court is sensitive to the constitutional concerns raised by the Court's decision in *District of Columbia v. Heller,* ——

U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). *See, e.g., In re United States,* 578 F.3d 1195 (10th Cir.2009). But as the Court noted in *Heller,* "like most rights, the right secured by the Second Amendment is not unlimited." 128 S.Ct. at 2816–17 and 2817 n. 26. Nothing in *Heller* bolsters Murray's argument about the level of mens rea the government must prove to establish the charged violation.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court DENY defendant Fritz Murray's motion to in limine and GRANT the government's motion in limine regarding the burden of proof

Entered this 21st day of September, 2009.