Argued and submitted September 29, 2020, remanded for resentencing
April 6, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW BLAKE STORM,
aka Matthew Storm,
*Defendant-Appellant.*

Coos County Circuit Court
18CR40975; A170211

509 P3d 132

Defendant appeals a supplemental judgment awarding restitution, entered after he admitted that he had damaged property of the victim. Defendant contends that the court erred in ordering restitution for damages from criminal activities of which defendant was not convicted and to which he did not admit, as required by ORS 137.106(1)(a). *Held*: Defendant's admission to damaging the victim's property encompassed the acts of punching the wall and, given his concession, throwing the vacuum cleaner. The court therefore was free to make findings regarding how much damage defendant's punch and throw had caused and to impose restitution for that damage in full. However, from the record and defendant's conviction, the punch to the wall and the throwing of the vacuum cleaner were the only criminal acts that the trial court could find defendant had admitted. Thus, it could not impose restitution for damage caused by any other act or acts that defendant may have committed, whether or not they themselves could fall within the "scope" of a criminal-mischief charge.

Remanded for resentencing.

Megan Jacquot, Judge. (Judgment December 4, 2018)

Martin E. Stone, Judge. (Supplemental Judgment February 11, 2019)

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeHoog, Judge pro tempore.*

DeHOOG, J. pro tempore.

Remanded for resentencing.

_____
* Pagán, J., *vice* DeVore, S. J.

**DeHOOG, J. pro tempore**

In this criminal case, defendant appeals a supplemental judgment awarding restitution, entered after he admitted that he had damaged property of the victim. Defendant contends that the court erred in ordering restitution for damages from criminal activities of which defendant was not convicted and to which he did not admit, as required by ORS 137.106(1)(a) (2021).[1] As explained below, in light of the Supreme Court's decision in *State v. Andrews*, 366 Or 65, 69, 456 P3d 261 (2020), we agree and, accordingly, reverse the supplemental judgment and remand for resentencing.

Defendant was charged with fourth-degree assault, ORS 163.160, harassment, ORS 166.065, and second-degree criminal mischief, ORS 164.354, committed "on or about May 31, 2018." Pursuant to a plea agreement, defendant pleaded guilty to fourth-degree assault and agreed to pay "reasonable restitution" for the charge of second-degree criminal mischief, although that charge, along with the harassment charge, was dismissed. Defendant admitted that he "unlawfully and intentionally damaged property belonging to [the victim]" without any reasonable ground or right to do so.

At the plea hearing, the prosecutor recited the factual basis for the plea. As relevant to the issue on appeal, she stated only that, when a police officer arrived at the victim's home, the victim "pointed out damage to the sheetrock at the residence from the Defendant punching a wall with his fist." Later in the hearing, the court asked, "And is the restitution for the sheetrock?" The prosecutor responded, "Yes, your honor." The police report described damage to a wall near the front door as well as above a doorway in a hallway, and photographs taken by the police officer showed the same damage. The photographs showed that the damage above the doorway in the hallway was to the door frame.

___

[1] In 2022, the legislature amended ORS 137.106, effective January 1, 2023. House Bill 4075 (2022) § 1; ORS 171.022. When that amendment takes effect, the relevant text, which is unchanged in the amended version, will appear in ORS 137.106(2)(a). All references to ORS 137.106 in this opinion are to the 2021 version of the statute.

Defendant received the police report and photographs as discovery, and both were later entered into evidence at the restitution hearing.

At the restitution hearing, the victim testified about damage that defendant had caused around May 31. She provided an estimate from a contractor to repair damage to several parts of the house, including areas other than the front door area and the hallway door frame. She explained that defendant had damaged the hallway door frame by throwing a vacuum cleaner at it, destroying the vacuum cleaner and resulting in additional damage to walls and an interior door that the vacuum cleaner bounced into. She also described damage to her car windshield, her iPhone, a statue, a fountain, and planter pots that she made to sell as art. She testified that defendant caused all of that damage, which took place over the course of 24 hours on or about May 31, 2018.

Defendant conceded that the trial court should impose restitution for the damage noted in the police report and photographs that he had received as discovery, which was the damage to the sheetrock and the hallway door frame. However, he argued that the court could not impose restitution for the "other items which [the victim] says [defendant] broke at some point but weren't part of this investigation," because "we don't believe [defendant has] been charged with those." The state responded that, even though the state had not originally identified all of the damage caused by defendant's criminal mischief, that information would have been presented if the case had gone to trial and, accordingly, defendant should be required to pay restitution for all of the damage.

The trial court noted that the criminal-mischief charge "alleges that on or about May 31, 2018, the Defendant intentionally damaged property belonging to [the victim]. And on or about could well be inclusive of things that happened the day before or the night before." The court ordered restitution for each of the items described by the victim above, noting that those damages "are the damages that relate to that particular criminal episode."

Defendant appeals, contending that the trial court erred in imposing restitution for damage other than the damage to the sheetrock and the hallway door frame. He contends that he admitted only the acts that caused the damage identified in the discovery he received and that the prosecutor described at the plea hearing. He argues that the trial court erred in awarding restitution for the other damage, because he was not charged with, and did not admit, acts that caused the other damage. The state responds that all of the damage for which the trial court ordered restitution is within the scope of defendant's admission that he intentionally damaged the victim's property on or about May 31, 2018. Relying on our case law, the state asserts that the burden was on defendant to limit his admission in some way if he did not intend to admit to all conduct that could fall within the scope of the admission: "[W]here, as here, the defendant does not expressly limit his guilty plea, the portion of the information to which he pleads guilty controls the scope of criminal activities of which he is convicted." (Citing *State v. Kirkland*, 268 Or App 420, 421-22, 427, 342 P3d 163 (2015).)[2]

ORS 137.106 requires an award of restitution when three prerequisites are met: (1) criminal activities; (2) economic damages; and (3) a causal relationship between the two. *Andrews*, 366 Or at 69. "Criminal activities" are defined as "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1). As the Supreme Court recently explained, "The restitution statute grants a court the authority to make its own, independent, factual findings as to the second and third prerequisites, but it does not recognize a similar authority to determine the first prerequisite— the criminal act that the defendant committed." *State v.*

---

[2] As explained above, defendant did not plead guilty to the charge of criminal mischief; rather, he agreed to pay reasonable restitution for that charge and admitted to it for that purpose only. However, we do not understand defendant to argue that there is any difference between the analysis for a charge to which a defendant pleads guilty and the analysis for a charge, like this one, that is dismissed but to which a defendant admits for purposes of imposition of restitution. *See, e.g.*, *State v. McDonald*, 291 Or App 629, 632, 636, 422 P3d 357 (2018) (applying the same analysis for a count to which the defendant had pleaded guilty and dismissed counts for which he had agreed to pay restitution).

*Lile*, 315 Or App 714, 717, 501 P3d 1079 (2021), *rev den*, 369 Or 211 (2022) (citing *Andrews*, 366 Or at 70-71).

Although *Andrews* involved a jury trial rather than an admission or a guilty plea, the court's holding in that case affects both contexts. In *Andrews*, the defendant was charged with fourth-degree assault and harassment. At trial, the state presented evidence that the defendant had both punched and spit on the victim, with the punch causing damage to the victim's dental bridge. As to the harassment charge, the state argued in closing that the jury could base its verdict on the defendant having spit on the victim, having punched him, or both. The jury convicted the defendant of harassment but acquitted him of fourth-degree assault. *State v. Andrews*, 295 Or App 194, 195, 433 P3d 757 (2018), *rev'd in part*, 366 Or 65, 456 P3d 261 (2020).

At the restitution hearing, the state sought restitution for the damage to the dental bridge. It presented the victim's testimony that the defendant had punched him in the face. The trial court reasoned that the jury could have found that the defendant had punched the victim and thereby caused the damage to the dental bridge. *Id*. at 196. Thus, over the defendant's objection, it ordered restitution. *Id*.

The defendant appealed, arguing that "the causal nexus [between the defendant's act of punching the victim and the damage to the dental bridge] is defeated because it cannot be ascertained from the jury's verdict that the jury necessarily believed that defendant hit the victim, as opposed to merely spitting on him." *Id*. at 197. We rejected that argument and, ultimately, affirmed.

First, we explained:

"Although a trial court cannot impose restitution for damages arising out of criminal activity for which a defendant was not convicted or which a defendant did not admit having committed, the court, in determining whether a defendant has engaged in criminal activity that resulted in a victim's economic damage, may consider any evidence that it ordinarily would at a sentencing hearing."

*Id*. (internal citation, quotation marks, brackets, and ellipses omitted). We recognized that "a trial court, in imposing

restitution, may not engage in factfinding that enlarges the scope of a defendant's criminal activities beyond what the defendant was convicted of or admitted to." *Id.* at 198. However, we reasoned that, because the jury's verdict was not inconsistent with a determination that the defendant had punched the victim—that is, either the spitting *or* the punch, both of which were in evidence, could have satisfied the offensive-physical-contact element of harassment—the trial court had not found facts that enlarged the scope of the defendant's criminal activities. *Id.*

The Supreme Court disagreed. The issue as framed by the court was "how a trial court is to determine, from a defendant's conviction, whether the defendant committed the criminal act on which the state relies for an award of restitution." *Andrews*, 366 Or at 69. The court explained that, in the state's view, a "trial court is permitted to conclude that a defendant committed a criminal act when there is evidence of that act in the record and that evidence is sufficient to support the jury's guilty verdict." *Id.* That is, echoing our holding in the case, the state argued that "a defendant's conviction determines the 'scope' of a defendant's criminal activity, and the trial court is permitted to find that the defendant committed any act within that scope." *Id.*

In concluding otherwise, the Supreme Court explained that, under ORS 137.106(1)(a), trial courts have "authority to make [their] own, independent, factual findings as to" two of the three elements necessary for a restitution award: "a victim's economic damages" and "the causal relationship between a defendant's criminal activities and the economic damages suffered by the victim." 366 Or at 70. Significantly, however, "the restitution statute does not grant [a trial court] similar authority to make its own independent factual findings about * * * the criminal act that the defendant committed." *Id.* at 71. The court explained that, in *State v. Lefthandbull*, 306 Or 330, 758 P2d 343 (1988), it had held that "more than a bald conviction is necessary" to allow a court to determine what criminal act a defendant has committed:

"In *Lefthandbull*, the defendant had pleaded guilty to an attempt to manufacture a controlled substance but had not

admitted committing any specific acts. This court held that the defendant could not be ordered to pay restitution for damages caused by the manufacturing process because the state had not 'proved' that the defendant had committed the criminal act on which the restitution claim was based. We explained that, '[b]ecause defendant pleaded guilty to the attempt, *** no particular acts were proved at trial. Nor did [the defendant] admit any specific acts at the plea proceeding or the sentencing hearing.'"

*Andrews*, 366 Or at 71 (quoting *Lefthandbull*, 306 Or at 332-33 (brackets and ellipsis in *Andrews*; internal citations omitted)).

The court summarized the principle it had articulated in *Lefthandbull*, as applied in the jury-trial context:

"[A] trial court must be able to determine from the record at trial, not only that the defendant was convicted of a crime, but also that the defendant committed a specific criminal act—the act on which the restitution claim is based. Put differently, ORS 137.106 does not grant trial courts authority to make their own factual findings about whether a defendant committed such an act; trial courts must look to the record and the defendant's conviction to make that determination."

*Andrews*, 366 Or at 71-72. Given that limitation on a court's authority to make findings about what criminal act or acts a defendant has committed, the court held that if, after a jury trial, "there is nothing in the record or the conviction to indicate that the jury found that the defendant committed the particular criminal act that is necessary to the decision of the sentencing court, then the sentencing court cannot conclude that the jury made that finding." *Id.* at 73.

Returning to its holding in *Lefthandbull*, the Supreme Court explained that, in that case, it had "concluded that the sentencing court did not have authority to award restitution because the court could not determine, from the defendant's guilty plea, the particular criminal act that the defendant had committed." *Andrews*, 366 Or at 73-74 (citing *Lefthandbull*, 306 Or at 333). The court elaborated:

"What is important about *Lefthandbull* is how this court treated the defendant's conviction. We did not consider

whether the particular act for which restitution was sought was within the 'scope' of the crime to which [the] defendant had pleaded guilty, or whether the defendant's guilty plea *could have been* based on an act that would have permitted restitution. Instead, we required that the trial court be able to determine that the state had 'proved' such an act."

*Andrews*, 366 Or at 74 (emphasis in original).

In summation, the court held:

"ORS 137.106(1)(a) does not permit an award of restitution unless a trial court can determine, from the record and the defendant's conviction, that the defendant committed the act that resulted in the victim's damages. A conviction may establish that a defendant committed a crime without establishing that the defendant committed any particular act. *See Lefthandbull*, 306 Or at 334 (upholding the defendant's conviction for attempt to manufacture a controlled substance, but not award of restitution)."

*Andrews*, 366 Or at 76.

Thus, under ORS 137.106(1)(a), a trial court lacks authority to make findings about the defendant's specific criminal act or acts; instead, "the record and the defendant's conviction" must establish "that the defendant committed the act that resulted in the victim's damages." *Andrews*, 366 Or at 76. The Supreme Court in *Andrews* therefore rejected our own approach—and the approach relied on by the trial court in this case and defended by the state on appeal—which allowed a sentencing court to make factual findings as to what acts were within the "scope" of the crime of conviction or to which the defendant had pleaded guilty. *Andrews*, 366 Or at 74 (noting that, in *Lefthandbull*, the court had "required that the trial court be able to determine that the state had 'proved'" a particular criminal act; "[w]e did not consider whether the particular act for which restitution was sought was within the 'scope' of the crime to which defendant had pleaded guilty"); *id.* at 76 (rejecting the state's argument that the fact of a conviction allows the trial court to find that a defendant committed any act within the scope of the crime as charged; "ORS 137.106(1)(a) does not permit an award of restitution unless a trial court

can determine, from the record and the defendant's conviction, that the defendant committed the act that resulted in the victim's damages.").

In the context of a guilty plea or admission, then, the question is whether the trial court can determine—based on the existing record and the crime to which the defendant has pleaded guilty—that the defendant has admitted to engaging in a specific criminal act or acts; just as it does in the jury-trial context, the trial court lacks authority to make findings about the defendant's criminal act or acts. *Andrews*, 366 Or at 71 ("[T]he restitution statute does not grant [a trial court] authority to make its own independent factual findings about *** the criminal act that the defendant committed."); *see also id.* ("'[B]ecause defendant pleaded guilty to the attempt, *** no particular acts were proved at trial. Nor did [the defendant] *admit* any specific acts at the plea proceeding or the sentencing hearing.'" (Quoting *Lefthandbull*, 306 Or at 333 (brackets and ellipses in *Andrews*; emphasis added).)).

Here, defendant admitted that, on or about March 31, he intentionally damaged property belonging to the victim. The factual basis for the admission was that defendant punched the wall with his fist and damaged the sheetrock. Defendant received discovery showing that there was also damage to the hallway door frame.

At the restitution hearing, the state presented testimony from the victim that defendant had caused the damage to the sheetrock and the door frame. As to the door frame, the victim testified that defendant damaged it by throwing a vacuum cleaner at it, which broke the vacuum cleaner and also caused other damage to the walls and an interior door. She also testified that, through different acts committed within about 24 hours of those acts, defendant had damaged other parts of the house, her car windshield, her iPhone, and planter pots. Defendant did not testify at the restitution hearing.

From that record and defendant's conviction, the acts that the court could determine that defendant had admitted were the act of punching the wall by the front door and—in light of defendant's concession—the act that

damaged the hallway door frame, namely, throwing the vacuum.[3]

The precise boundary between a trial court's permissible finding that an admitted or proved act caused certain damage and an impermissible finding that a defendant committed a specific criminal act may, in some cases, be difficult to discern. Our recent decision in *Lile*, 315 Or App 714, provides a helpful comparison to this case, although it, like *Andrews*, involved a jury trial. In *Lile*, a jury convicted the defendant of criminal mischief for kicking the door of the victim's car. After the trial court imposed restitution for the cost of repairing a dent in the car door, the defendant appealed, contending that the jury could have found that his kick merely scuffed, but did not dent, the car door; consequently, the defendant argued, under *Andrews*, the court had engaged in impermissible factfinding about the criminal act. *Lile*, 315 Or App at 716-17.

We disagreed. We explained that *Lile* was different from *Andrews* because, in finding the defendant guilty of criminal mischief—intentional damage to property of another—the jury had necessarily found "that defendant kicked the car and the kick caused damage." *Lile*, 315 Or App at 318. Under those circumstances, the trial court was merely making a finding about causation—how much damage the defendant had caused by kicking the victim's car door—when it found that the kick had caused the dent. *Id.* Accordingly, the trial court had not erred in imposing restitution for the dent. *Id.*

---

[3] Under the framework for restitution that the Supreme Court articulated in *Andrews*, we understand defendant's concession, both in the trial court and on appeal, that the court could impose restitution for the damage to the door frame, to necessarily carry with it a concession that he admitted to the act that caused the damage to the door frame. To the extent that defendant advances a standalone argument that the court cannot impose restitution for any damage that is not identified in the factual basis for the plea or in discovery, we reject that argument. As explained in the text, under *Andrews*, the question that must be answered from the record and the defendant's conviction is what criminal act or acts a defendant has committed; the extent of the damages caused by that act or acts is a matter that may be resolved through factfinding by the trial court.

Defendant also argues about exactly which items constitute the "record" for purposes of determining what a defendant has admitted. Because the precise contours of the "record" do not affect the outcome here, we do not address that question in this opinion.

Here, defendant's admission to damaging the victim's property encompassed the acts of punching the wall and (given the concession) throwing the vacuum cleaner. Thus, as in *Lile*, here, the court was free to make findings regarding how much damage the punch and the throw caused and to impose restitution for that damage in full. That damage included the damage to the sheetrock, the door frame, the vacuum, and the walls and interior door that the vacuum struck. However, from the record and defendant's conviction, the punch to the wall and the throwing of the vacuum cleaner were the only criminal acts that the trial court could find defendant had admitted. Thus, it could not impose restitution for damage caused by any other act or acts that defendant may have committed, whether or not they themselves could fall within the "scope" of a criminal-mischief charge. It follows that the trial court erred in ordering restitution for damage to other parts of the house, the victim's car windshield, her iPhone, the statue, the fountain, and the planter pots. We, therefore, remand for resentencing.

Remanded for resentencing.